Bruce I. Afran
Attorney-at-Law
10 Braeburn Dr.
Princeton, N.J. 08540
606-454-7435

January 4, 2024

The Honorable Katherine Polk Failla
United States District Judge
40 Foley Square, Room 2103
New York, NY 10007

Re: *Consortium for Independent Journalism, Inc. v. United States of America & NewsGuard Technologies, Inc.*, Case No. 23-cv-07088-KPF

Dear Judge Failla:

In its pre-motion letter seeking leave to file a motion to dismiss, NewsGuard argues, initially, that "***NewsGuard Did Not Evaluate Consortium News Pursuant to Its Government Contract".*** *See* NewsGuard Letter at 1 [emphasis in original]. To support this argument, NewsGuard claims its Misinformation Fingerprints contract covers only "false narratives" by "hostile *governments*, …" *See* NewsGuard Letter at 1 [emphasis added]. NewsGuard thus reasons that because plaintiff is a not a "government", the complaint fails to allege conduct performed under the Cyber Command contract. This fact-laden argument is bound to fail on a motion to dismiss. As the Amended Complaint alleges, NewsGuard co-founder Crovitz described the Misinformation Fingerprints program in *broad* terms, i.e., that it is "focused *on the identification and analysis of information operations targeting the US and its allies"* and that "we provide an understanding of *how this disinformation spreads online.* Compl. at ¶*22*. In other words, it is a contract to monitor all "online" activity, logically including private websites, such as Consortium News (CN).

In fact, the complaint alleges that NewsGuard did issue its rating of CN within the scope of the government contract. As the Amended Complaint states, the Misinformation" contract covers the *same three subject areas* on which NewsGuard rated Consortium News: 1) that the "West staged a coup to overthrow the Ukrainian government"; 2) Ukraine is dominated by Nazi ideology; and 3)"genocide" has been practiced in Ukraine as to Russians in Donbas. Compl. at ¶¶143-145; Ex. Q.  It is undisputed that NewsGuard rated CN on these same subject areas, Compl. at ¶¶74-106, and did so only *after* its government contract commenced. Complaint at 3. These are "enough facts to state a claim to relief that is *plausible on its face*", i.e., that NewsGuard's "rating" of CN was within the scope of its government contract. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) [emphasis added]; *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009).

**NewsGuard's defense that it is not a "state actor"**. The issue of whether a private party is a "state actor" is "necessarily [a] fact-bound inquiry". *Brentwood Acad. v. Tennessee Secondary*

*Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001). NewsGuard cites no authority that a court may decide this fact-intensive question on a motion to dismiss. In fact, both decisions cited in NewsGuard's pre-motion letter, *see* <u>NewsGuard Letter</u> at 1 (citing cases), concerned a grant of summary judgment that can only be decided *after* discovery, not on a motion at the threshold.

In any event, the Amended Complaint *does* show a close nexus between NewsGuard and the U.S., quoting Crovitz as stating that NewsGuard works "*for* the Pentagon's Cyber Command" and "*on behalf*" of the U.S. and its allies: "We are proud of our work countering Russian and Chinese disinformation *on behalf of* Western democracies." Compl. at ¶22, citing Ex. K [emphasis added]. Crovitz also admits NewsGuard feeds intelligence to U.S. intelligence agencies: "Our analysts alert officials in the US…about new false narratives targeting America and its allies…" *Id.* NewsGuard also has a strange, inexplicable collection of former high-ranking officials of the Intelligence Community on its board. Compl. at n.2. This consanguinity with the Intelligence Community, seen in light of NewsGuard's contract with the Cyber Command, and Crovitz's admissions, makes it clear that no motion to dismiss based on a "state actor" defense can succeed in what is "necessarily [a] fact-bound inquiry". *Brentwood*, *supra*.

As an element of the "state actor" question, an issue of fact arises as to whether NewsGuard's actions satisfy the "public function test," i.e., that NewsGuard's "private conduct consisted of an activity that has traditionally been the exclusive prerogative of the state." *McGugan v. Aldana-Bernier,* 752 F.3d 224, 229 (2d Cir. 2014). NewsGuard's admissions show that it is paid to seek out and report to the U.S. on intelligence matters and works "on behalf of" the Nation's intelligence agencies, functions traditionally "the exclusive prerogative of the state." *McGugan, supra*. For these further reasons, a motion to dismiss on "state actor" grounds will be futile.

As to NewsGuard's defense that it did not "coerce" Consortium News, the Second Circuit has recognized that "although government officials are free to advocate for (or against) certain viewpoints, they may not encourage suppression of protected speech in a manner that '*can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request.*'" *NRA of Am. v. Vullo*, 49 F.4th 700,715 (2d Cir. 2022) [emphasis added]. The Amended Complaint alleges that a failure to meet NewsGuard's demands would be followed by retaliation consisting of the "warning" and "false content" labels and related material. *See* Complaint at p. 4; ¶¶41-47,150-156.  These facts plausibly allege "some form of punishment or adverse regulatory action" will follow a refusal to retract or "correct" CN's content, directly within the scope of *Vullo*. In addition, the Supreme Court has granted cert as to this very question, *NRA of Am. v. Vullo*, 2023 U.S. LEXIS 4371 (Nov. 3, 2023), further reason why it would be imprudent to hear this issue at this time.

All of the alleged defamation gives rise to questions of fact.  *See* Complaint at pp. 1-3; ¶¶51-55; Ex's A and N. For example, the term "anti-U.S." was used by NewsGuard in conjunction with the claims that CN is a purveyor of "false content", publishes "*false claims* about the Russia-Ukraine war and other international conflicts", that readers must "proceed with caution" when reading this newspaper because it "fails to maintain basic standards of accuracy and

accountability" and fails to "regularly" correct errors. *Id.* All of these references are defamatory. Moreover, the term "anti-U.S." cannot be viewed in isolation from the rest of the defamatory material to try to "hold [it] non-libelous". *November v. Time Inc.*, 13 N.Y.2d 175, 177 (N.Y. 1963)("words are to be construed … as they would be read and understood *by the public to which they are addressed.*" [emphasis added]. Obviously, the average reader using the "ordinary meaning" of NewsGuard's language in the context of the full defamatory clauses, Compl. at ¶¶51-55, would likely interpret the term "anti-U.S." to mean that CN spreads "false" Russian propaganda, plainly defamatory. In any event, merely because CN writers may challenge U.S. foreign policy does not support a claim that CN (or any newspaper) is "anti-U.S.", a statement that typically applies to the Nation's enemies, not loyal journalists. Since factual issues abound as to the meaning of the defamatory material, leave to move to dismiss should be denied.

Laced with the defamatory references, Compl. at ¶¶51-55, NewsGuard's so-called "nutrition labels" are not an "obvious" opinion piece such as a food review or an article about a restaurant's style of drag queen waiters. Cf. *Themed Restaurants, Inc. v. Zagat Survey, LLC*, 21 A.D.3d 826, 827 (2005)(cited by NewsGuard). In addition, NewsGuard's libel of CN is defamatory *per se* since it slanders CN in its "trade, business or profession". *Liberman v Gelstein*, 80 NY2d 429, 435 (1992); *accord Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985). In light of the totality of NewsGuard's defamation, factual issues abound and leave to file the motion should be denied.

NewsGuard implies, falsely, that *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 176 (2d Cir. 2000), requires proof of "actual malice". This is true only in the case of a "public *official*" but in cases concerning a "public *figure*", i.e., a newspaper, the standard is whether the plaintiff suffered "substantial danger to reputation" and can make "a showing of highly unreasonable conduct [by defendant] constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 155 (1967)(distinguishing actual malice test for a "public *official*" and the lessened test for a "public *figure*.) The Amended Complaint alleges facts sufficient to satisfy the "public *figure*" standard in *Curtis*. For example, NewsGuard says it takes issue with only six (6) CN articles but recklessly attaches the claim of "false content", "false claims, and the like to **all** 20,000 CN articles, even though *it has never read them*. Complaint at 1-3; ¶¶38, 56-70,169-178. Such is the very definition of "highly unreasonable conduct" constituting "an extreme departure from ordinary investigative "standards". *Curtis, supra*. In any event, based on these same facts, the complaint *does* plead "malicious" conduct, Compl. at ¶¶57, 160-188, and that NewsGuard acted with the premeditated intent to defame even before it obtained CN's explanation. Compl. at ¶¶166-168.

For the foregoing reasons, the motion to dismiss is likely to be denied and it would be an imprudent use of resources for the court to give leave in this instance.[1]

---

[1] It should be noted that NewsGuard errs when it says that CN did not respond to its requests for explanation of the CN articles. As footnote 5 to the Amended Complaint makes clear, this was true only in August 2023 when NewsGuard again attempted to force retractions from CN. It is undisputed that when first approached by NewsGuard in March 2022, CN did provide a long and responsive explanation.

Respectfully submitted,

S/Bruce I. Afran
    Counsel for Plaintiff

**Via ECF**