UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————x
                                     :

CONSORTIUM FOR INDEPENDENT       :
JOURNALISM, INC.,                         :
                                       :
              Plaintiff,        :    Case No. 1:23-cv-07088
                                       :
           v.                        :
                                       :
THE UNITED STATES OF AMERICA and   :
NEWSGUARD TECHNOLOGIES, INC.,     :
                                       :
             Defendants.     :
—————————————————————————x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT NEWSGUARD TECHNOLOGIES, INC.'S
## <u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000
TBoutrous@gibsondunn.com
ATayrani@gibsondunn.com
APerloff-Giles@gibsondunn.com

*Counsel for Defendant NewsGuard
Technologies, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 2

   I.     NewsGuard ............................................................................................................... 2

   II.    The ConsortiumNews.com Nutrition Label ................................................................ 5

   III.   The "Misinformation Fingerprints" Contract ............................................................ 7

   IV.   Procedural History .................................................................................................... 8

ARGUMENT ........................................................................................................................ 8

   I.     Consortium News' First Amendment Claim Should Be Dismissed. ......................... 8

       A.    NewsGuard Did Not Rate Consortium News Pursuant To Its Government
            Contract…................................................................................................... 8

       B.    NewsGuard Is Not A State Actor ................................................................. 9

       C.    Consortium News Was Not Punished Or Otherwise Coerced. .................... 12

       D.    Consortium News Cannot Recover Injunctive Relief Or Damages Under
            The First Amendment. ............................................................................... 13

   II.    Consortium News' Defamation Claim Should Be Dismissed ................................. 14

       A.    Consortium News Does Not Plausibly Allege A False Statement Of Fact . 15

       B.    Consortium News Does Not Plausibly Allege Actual Malice. .................... 22

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

*Alterescu v. New York City Dep't of Educ.*,
  2022 WL 3646050 (S.D.N.Y. Aug. 23, 2022).........................................................................10

*People ex rel. Arcara v. Cloud Books, Inc.*,
  68 N.Y.2d 553 (1986)..............................................................................................................25

*Bantam Books, Inc. v. Sullivan*,
  372 U.S. 58 (1983)...................................................................................................................13

*Biro v. Condé Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012).....................................................................................20

*Biro v. Condé Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013).....................................................................................15

*Blair v. Inside Ed. Prods.*,
  7 F. Supp. 3d 348 (S.D.N.Y. 2014) .........................................................................................21

*Brian v. Richardson*,
  87 N.Y.2d 46 (1995) ..........................................................................................................15, 17

*Brimelow v. N.Y. Times Co.*,
  2020 WL 7405261 (S.D.N.Y. 2020).............................................................................17, 23, 24

*Celle v. Filipino Reporter Enters. Inc.*,
  209 F.3d 163 (2d Cir. 2000).............................................................................................16, 22

*Church of Scientology Int'l v. Behar*,
  238 F.3d 168 (2d Cir. 2001)....................................................................................................23

*Contemp. Mission, Inc. v. N.Y. Times Co.*,
  842 F.2d 612 (2d Cir. 1988)..............................................................................................22, 23

*Corr. Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001)...................................................................................................................14

*Cummings v. City of New York*,
  2020 WL 882335 (S.D.N.Y. Feb. 24, 2020)............................................................................15

*Cummings v. City of New York*,
  2022 WL 2166585 (2d Cir. June 16, 2022) .............................................................................15

*Curtis Publishing Co. v. Butts*,
  288 U.S. 130 (1967)…………………………………………………………………… 23

*Davis v. Avvo, Inc.*,
   345 F. Supp. 3d 534 (S.D.N.Y. 2018)................................................................17

*Dfinity Found. v. New York Times Co.*,
   2023 WL 7526458 (S.D.N.Y. Nov. 13, 2023) ....................................................16

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)................................................................................3

*Dorce v. City of New York*,
   2 F.4th 82 (2d Cir. 2021) ...................................................................................13

*Edwards v. Nat'l Audubon Soc'y, Inc.*,
   556 F.2d 113 (2d Cir. 1977)...............................................................................24

*Egbert v. Boule*,
   596 U.S. 482 (2022)............................................................................................14

*Egiazaryan v. Zalmayev*,
   880 F. Supp. 2d 494 (S.D.N.Y. 2012) ...............................................................17

*Finkelstein v. Wachtel*,
   2003 WL 1918309 (S.D.N.Y. Apr. 21, 2003).....................................................17

*Franklin v. Daily Holdings, Inc.*,
   135 A.D.3d 87 (1st Dep't 2015) .........................................................................20

*Frascatore v. Blake*,
   344 F. Supp. 3d 481 (S.D.N.Y. 2018)..........................................................19, 20

*Freeman v. Johnston*,
   192 A.D.2d 250 (1st Dep't 1993) .......................................................................25

*Galasso v. Saltzman*,
   42 A.D.3d 310 (1st Dep't 2007) .........................................................................18

*Ganske v. Mensch*,
   480 F. Supp. 3d 542 (S.D.N.Y. 2020)..........................................................17, 19

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)......................................................................................22, 23

*Gitter v. Target Corp.*,
   2015 WL 5710454 (S.D.N.Y. Sept. 29, 2015)....................................................11

*Goldman v. Abraham Heschel Sch.*,
   2024 WL 2278980 (1st Dep't May 21, 2024).....................................................15

iii

*Grogan v. Blooming Grove Volunteer Ambulance Corps*,
  768 F.3d 259 (2d Cir. 2014)..................................................................11

*Gross v. N.Y. Times Co.*,
  82 N.Y.2d 146 (1993) ...................................................................16, 18

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989)............................................................................25

*Jackson v. Metropolitan Edison Co.*,
  419 U.S. 345 (1974).....................................................................10, 11

*Leidig v. BuzzFeed, Inc.*,
  371 F. Supp. 3d 134 (S.D.N.Y. 2019).................................................20

*Levin v. McPhee*,
  119 F.3d 189 (2d Cir. 1997).........................................................15, 21

*Manhattan Community Access Corp. v. Halleck*,
  587 U.S. 802 (2019)......................................................................10, 11

*McDougal v. Fox News Network, LLC*,
  489 F. Supp. 3d 174 (S.D.N.Y. 2020)..............................................8, 25

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)................................................................................15

*Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*,
  326 F. Supp. 3d 26 (S.D.N.Y. 2018)...................................................20

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964).......................................................................22, 23

*Nat'l Rifle Ass'n of Am. v. Vullo*,
  -- S. Ct. --, 2024 WL 2751216 (May 30, 2024) .................................12

*Nebraska Press Ass'n v. Stuart*,
  427 U.S. 539 (1976)............................................................................25

*Old Dominion Branch No. 496 v. Austin*,
  418 U.S. 264 (1974).......................................................................16, 17

*Org. for a Better Austin v. Keefe*,
  402 U.S. 415 (1971)............................................................................25

*Pan Am. World Airways, Inc. v. Flight 001, Inc.*,
  2007 WL 2040588 (S.D.N.Y. July 13, 2007) ......................................14

*PEN Am. Ctr., Inc. v. Trump*,
    448 F. Supp. 3d 309 (S.D.N.Y. 2020)............................................................13

*Prince v. Intercept*,
    634 F. Supp. 3d 114 (S.D.N.Y. 2022)............................................................25

*Ratajack v. Brewster Fire Dep't Inc.*,
    178 F. Supp. 3d 118 (S.D.N.Y. 2016)............................................................17

*Reichle v. Howards*,
    566 U.S. 658 (2012)............................................................14

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982)............................................................10

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
    86 A.D. 3d 32 (1st Dep't 2011) ............................................................19

*Shapiro v. Goldman*,
    2016 WL 4371741 (S.D.N.Y. Aug. 15, 2016) ............................................................14

*Silverman v. Daily News, L.P.*,
    129 A.D.3d 1054 (2d Dep't 2015) ............................................................18

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)............................................................25

*Steinhilber v. Alphonse*,
    68 N.Y.2d 283 (1986) ............................................................18

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017)............................................................20

*Themed Restaurants, Inc. v. Zagat Surv., LLC*,
    4 Misc. 3d 974 (Sup. Ct. N.Y. Cnty. 2004) ............................................................25

*Themed Restaurants, Inc. v. Zagat Survey, LLC*,
    21 A.D.3d 826 (1st Dep't 2005) ............................................................17

*Volokh v. James*,
    2024 WL 1905784 (S.D.N.Y. Apr. 30, 2024)............................................................12, 13

*Wandering Dago, Inc. v. Destito*,
    879 F.3d 20 (2d Cir. 2018)............................................................12

*Williams v. Calderoni*,
    2012 WL 691832 (S.D.N.Y. 2012)............................................................25

*X-Men Sec., Inc. v. Pataki*,
196 F.3d 56 (2d Cir. 1999)......................................................................................................12

Defendant NewsGuard Technologies, Inc. ("NewsGuard") respectfully submits this memorandum in support of its motion to dismiss Plaintiff Consortium for Independent Journalism, Inc.'s ("Consortium News") Second Amended Complaint ("Complaint" or "Compl.").

## PRELIMINARY STATEMENT

NewsGuard is a private, apolitical media organization that provides tools to identify and counter misinformation. Among those tools is NewsGuard's website rating system, which assesses the credibility of news websites and explains the rationale for the rating in a "Nutrition Label." As a private organization unaffiliated with the United States government, NewsGuard has a First Amendment right to form and disseminate its own opinions about the reliability and journalistic ethics of news outlets. Consortium News disagrees with NewsGuard's assessment of its credibility and, ironically, accuses NewsGuard of "imposing a form of censorship" even as it seeks to "permanently enjoin[] [NewsGuard] from publishing" its opinions about Consortium News. Compl. ¶ 24 & at 45. Consortium News' attempt to silence NewsGuard fails.

Consortium News' First Amendment claim is flawed in multiple respects. First, the claim is premised on a mischaracterization of NewsGuard's government contract, which did not involve the rating of Consortium News or any other news outlet. Second, the Complaint fails to adequately allege that NewsGuard is a state actor; its basic premise—that the existence of a contract with a government entity somehow renders all of NewsGuard's actions attributable to the government— would open the floodgates to treating millions of government contractors as state actors. Third, even if the First Amendment did apply to NewsGuard, the Complaint does not and cannot allege that NewsGuard's rating of Consortium News constitutes impermissible coercion under the First Amendment. Far from threatening prosecution or adverse regulatory action, the NewsGuard rating system is a speech-maximizing tool, designed to equip readers with more information as an

1

alternative to simply blocking sources of misinformation.  Finally, Consortium News' request for an injunction fails because NewsGuard's contract with the government ended eighteen months ago, and its request for damages fails because the Supreme Court has never authorized a *Bivens* remedy for First Amendment claims and has barred such claims against private companies.

Consortium News' defamation claim fares no better.  The term "anti-U.S." is classic protected opinion because it has no precise meaning and is not capable of being proven true or false.  And, if it were a statement of fact, it would be substantially true, in light of Consortium News' own description of its positions as "contrary to U.S. policy."  Compl. ¶¶ 20, 83(a), 91(a), 106(a), 117(a), 135(a).  NewsGuard's assessment of Consortium News' accuracy and credibility, too, is nonactionable opinion because "NewsGuard ratings involve human judgment" and "reasonable people (and news organizations) have reached a divergent set of views" as to the issues and events addressed by Consortium News.  ECF No. 3-2, at 7; Compl. ¶ 105.  Nor are NewsGuard's statements provably false, as Consortium News concedes that its reporting involves "matter[s] of interpretation and inference" and "arguable point[s]."  Compl. ¶ 98; ECF No. 5-5.  Finally, Consortium News has not plausibly alleged that NewsGuard—which undertakes an exhaustive diligence process that provides for extensive opportunity for input from the news site under review—acted with actual malice with respect to any alleged defamatory statement.

For all of these reasons, Consortium News' efforts to shut down criticism and debate should be rejected, and its claims dismissed with prejudice.

## FACTUAL BACKGROUND

### I. NewsGuard

NewsGuard is an apolitical, private media organization that launched in 2018.  Compl. ¶¶ 2, 31.  One of its aims is to provide news consumers with detailed assessments of the reliability

of news sources they might encounter on the Internet, *see* ECF Nos. 3-2, 5-2, which it does through a product it calls the "Nutrition Label." *See* ECF Nos. 5-3, 5-4.[1]  To prepare a Nutrition Label for a given news or information outlet, NewsGuard's team of journalists and editors rates the outlet using nine apolitical criteria relating to basic journalistic practices.  ECF No. 3-2.

These criteria are based on widely accepted journalistic standards and are posted publicly on NewsGuard's website, along with detailed explanations.  *Id*.  The criteria are: (1) whether a publication repeatedly publishes egregiously false information; (2) whether a publication presents information responsibly, for example, by referencing multiple sources including those with first-hand information on a topic; (3) whether the site transparently acknowledges errors and regularly publishes clarifications and corrections; (4) whether a publication distinguishes between news and opinion; (5) whether a publication publishes significantly sensationalized or otherwise deceptive headlines; (6) whether the site discloses in a user-friendly manner its ownership and/or financing; (7) whether paid advertising is clearly labeled as such; (8) whether readers are told who is in charge of deciding the content on the site and given a way to contact the site about editorial issues; and (9) whether the names and contact information or biographical information about the content creators are clearly indicated.  *Id*.  NewsGuard's evaluation of the nine criteria "involve[s] human judgment to assess a site's performance on each of the nine criteria."  *Id*.

These nine criteria are each weighted according to point values.  *Id*.  The points for all nine criteria are then added up to yield a "trust score" out of 100 and a corresponding "Red or Green rating" (or, more recently, a "blue flag or symbol"), reflecting NewsGuard's assessment of the

---

[1] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

site's trustworthiness.  *Id.*; Compl. ¶ 34 n.3.  If a website scores lower than 60 points, readers who have access to the NewsGuard rating such as through a browser extension are cautioned that the website "generally fails to meet basic standards of credibility and transparency," according to NewsGuard's nine criteria.  ECF No. 3-2.  Along with the rating itself, NewsGuard publishes a written "Nutrition Label," which describes the decisions behind the rating "in detail," including "why NewsGuard made its determination on each of the criteria."  *Id*.  NewsGuard's "detailed 'Nutrition Label' review explain[s] who is behind the site, what kind of content it publishes, and why it received its rating — with specific examples of any trust issues our team found."  Compl. ¶ 32.  Prior to publication, each Nutrition Label is reviewed by at least one senior NewsGuard editor, as well as NewsGuard's co-CEOs, "to ensure that the rating is as fair and accurate as possible."  ECF No. 3-2.

As a "brand safety" product, NewsGuard's ratings permit advertisers to protect their "brand" by knowing more about a platform before running ads.  *See* Compl. at 2.  In addition, NewsGuard has thousands of individual subscribers who pay a small monthly fee to see NewsGuard's ratings of news outlets next to online search results.  *Id.* ¶ 31.  The short-form Nutrition Label that appears when NewsGuard users hover their mouse over the NewsGuard score in online search results contains a prominent link with text in capital letters inviting users to "SEE THE FULL NUTRITION LABEL" for the detailed review.  ECF No. 5-3.  NewsGuard also works with institutional clients, such as "libraries and universities, who pay NewsGuard for subscription and reporting services."  Compl. ¶ 31.  In all of these settings, the aim of NewsGuard's rating system is to give readers "the information they need about sources of news they see online so that they can make up their own minds about which sources they choose to trust and which to distrust." ECF No. 5-2.

## II.     The ConsortiumNews.com Nutrition Label

Consortium News is "an internet-based news, commentary and analysis provider . . . frequently challenging U.S. governmental or foreign policy."  Compl. ¶ 6.  The site was launched in 1995 by Robert Parry, who believed that "important stories were suppressed by his editors at commercial news organizations" and who "sought to provide a publication for a consortium of journalists whose work, often critical of U.S. policy, was treated in a similar fashion by their editors."  *Id.* ¶¶ 9–10.

On March 25, 2022, a NewsGuard reporter first reached out to Consortium News as part of the diligence for its Nutrition Label for ConsortiumNews.com.  ECF No. 3-3.  The NewsGuard reporter explained that he was preparing a review of Consortium News, which would "include a written summary and a checklist of nine criteria," and requested to speak with someone who could answer questions about Consortium News' ownership, its handling of corrections, and its publication of seemingly false content.  *Id*.  NewsGuard's reporter emphasized that any information it was collecting was for publication on the NewsGuard site.  *Id*.  After Consortium News' editor-in-chief, Joe Lauria, responded, indicating that he was the appropriate point of contact, the NewsGuard reporter followed up on March 28 with a series of questions, such as why Consortium News does not name the two foundations that fund it and whether it has a corrections policy, and requesting comment on certain instances where Consortium News published claims that appeared to be false, based on information offered in the reporter's email.  *Id.*  Several weeks went by, with Mr. Lauria first promising on April 1 that he would "be working on these questions over the weekend," then on April 13 that he was "still working on our response," then on May 13—after NewsGuard followed up repeatedly—that "I intend to answer all your questions on Monday."  *Id.*

Consortium News did not include any eventual response in exhibits to its Complaint, although NewsGuard's detailed Nutrition Label quotes from and links to "Consortium News' full June 2022 response to NewsGuard's questions."  ECF No. 5-5.  More than a year later, NewsGuard sent additional requests for comment regarding a June 2023 Consortium News article that also appeared to be false: "Lauria, the site's editor-in-chief, did not respond to two emails sent in August 2023 requesting comment on [that] article."  *Id.*; *see* ECF No. 5-4 (unanswered emails from NewsGuard reporter).

NewsGuard ultimately awarded Consortium News a score of 47.5 out of 100 for its Nutrition Label, finding that the site failed three categories: (1) does not repeatedly publish false content, (2) gathers and presents information responsibly, and (3) regularly corrects or clarifies errors.  *See* ECF Nos. 5-3, 5-5.  At the same time, NewsGuard found that Consortium News "[h]andles the difference between news and opinion responsibly," "[a]voids deceptive headlines," discloses its "ownership and financing" transparently on its website, "[r]eveals who's in charge, including any possible conflicts of interest," and "provides names of content creators, along with either contact or biographical information."  ECF No. 5-5.

The short-form Nutrition Label that appears in a NewsGuard user's search for Consortium News describes the site as "[a] website that covers international politics from a leftwing perspective that has published false claims about the Russia-Ukraine war and other international conflicts."  ECF No. 5-3.  It further states, "**Proceed with Caution:** This website generally fails to maintain basic standards of accuracy and accountability."  *Id*.  As with all NewsGuard ratings, the short-form Nutrition Label includes a link to the full Nutrition Label.  *Id*.

That detailed writeup describes how NewsGuard reached each component of the Consortium News rating, giving examples and evidence to support its conclusions.  ECF No. 5-5.

For example, to support its assessment that "ConsortiumNews.com has published many false and misleading claims," NewsGuard highlighted Consortium News articles reporting information on Ukraine that has been disproven by government agencies and international organizations. *Id.* As the Nutrition Label states, "[b]ecause ConsortiumNews.com has frequently published false and misleading claims about the war in Ukraine and other important subjects, NewsGuard has determined that the site repeatedly publishes false content and does not gather and present information responsibly." *Id.*

NewsGuard periodically updates its rating of each site. ECF No. 3-2. NewsGuard published its most recent review of Consortium News in September 2023. ECF No. 5-4.

## III.    The "Misinformation Fingerprints" Contract

Entirely separate from its website ratings, NewsGuard also operates a "Misinformation Fingerprints" database, which tracks false narratives made and spread online such as those perpetuated by foreign governments, including Russia and China. *See* ECF No. 5-8. Entities that license the "Misinformation Fingerprints" data, whether government agencies or private organizations, can "trace the provenance of myths" spread by foreign governments and "how they are shared." *Id.* NewsGuard's contracts with government entities that pay to access and license Misinformation Fingerprints data "are entirely unrelated" to NewsGuard's rating of news publishers; whereas the Nutrition Labels are about improving the media literacy of news consumers, the Misinformation Fingerprints work for the U.S. government "is focused on the identification and analysis of information operations targeting the U.S. and its allies conducted by hostile governments, including Russia and China." ECF No. 5-2.

In September 2021, the Department of Defense—and specifically the United States Air Force and its Air Force Materiel Command—awarded NewsGuard a contract for its

"Misinformation Fingerprints" program.  Compl. ¶ 19; ECF No. 5-1.  The contract, for $749,387, ran from September 7, 2021, to December 8, 2022, Compl. ¶ 19; ECF No. 5-1, ending approximately nine months before the updated Consortium News Nutrition Label was published on September 1, 2023, *see* ECF No. 5-5.  The grant funded development of the Misinformation Fingerprints program from a technical perspective and had no connection to NewsGuard's rating of news sites.  *See* ECF No. 5-1 (noting the grant supported "Research and Development in the Physical, Engineering, and Life Sciences").

**IV.    Procedural History**

Consortium News commenced this lawsuit on August 11, 2023.  ECF No. 3.  Consortium News then filed its First Amended Complaint on November 17, 2023.  ECF No. 14.  The parties filed pre-motion letters and responses in January and February 2024.  ECF Nos. 18, 21, 22, 25. On March 8, 2024, the parties attended a pre-motion conference on the proposed motions to dismiss.  Following the conference, Consortium News confirmed its intent to file a Second Amended Complaint, ECF No. 31, which this Court permitted, ECF No. 31.  On April 12, 2024, Consortium News filed its Second Amended Complaint.  ECF No. 36 (the "Complaint").

## ARGUMENT

**I.    Consortium News' First Amendment Claim Should Be Dismissed.**

### A.  NewsGuard Did Not Rate Consortium News Pursuant To Its Government Contract.

Consortium News' First Amendment claim rests on the false premises that NewsGuard's rating of its website is "part and parcel of th[e] 'Misinformation Fingerprints' program," which "amount[s] to a government-funded advisory as to officially disfavored information."  Compl. at 2 & ¶ 145.  Those premises are "pure speculation, supported not by facts but by only conclusory statements."  *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020).

In fact, NewsGuard is "a private for profit corporation" whose "business model" includes both the "Misinformation Fingerprints" program and the entirely unrelated "Nutrition Labels" used for "'brand safety' validation services." Compl. ¶¶ 31, 174. The "Misinformation Fingerprints" program, for which NewsGuard received a Department of Defense Grant for work conducted from September 2021 through December 2022, *see* Compl. ¶¶ 19, 138 & ECF No. 5-1, is "focused on the identification and analysis of information operations targeting the US and its allies conducted by hostile governments, including Russia and China," Compl. ¶¶ 22, 141 & ECF No. 5-2. NewsGuard "catalogue[s]" "false narratives"—such as those issued by "Russia's propaganda outlets"—and compiles that data; NewsGuard then licenses the data to government entities or private technology companies, "enabling artificial intelligence tools to trace the provenance of myths and disclose how they are shared." Compl. ¶ 144 & ECF No. 5-2. The "Nutrition Labels," on the other hand, "rat[e] the 'trust', reliability and ethics of news organizations," based on nine publicly disclosed criteria relating to basic journalistic practices; NewsGuard makes the ratings available to advertisers and to subscribers, including individuals "who pay $4.95 monthly" to see the ratings when they run Internet searches, "corporate and governmental subscribers," and "public, private and university librar[ies]." Compl. ¶¶ 31, 36.

In short, as NewsGuard's co-CEO explained in a statement on which Consortium News heavily relies and that is attached to its Complaint, NewsGuard's rating of websites like Consortium News "is entirely independent and free of any outside influence, including from the U.S. or any other government." ECF No. 5-2; *see* Compl. ¶¶ 22–23, 140–42. That alone defeats Consortium News' claim that NewsGuard "acted jointly, intentionally or in concert with the United States to identify and publish" the Consortium News Nutrition Label. Compl. ¶ 149.

### B. NewsGuard Is Not A State Actor.

Even if there were some connection between NewsGuard's government contract and its

rating of Consortium News, Consortium News cannot pursue First Amendment relief against NewsGuard because it is a private company. "Because the United States Constitution regulates only the Government, not private parties, a litigant who alleges that [its] constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *Alterescu v. New York City Dep't of Educ.*, 2022 WL 3646050, at *5 (S.D.N.Y. Aug. 23, 2022) (Failla, J.) (cleaned up). NewsGuard is indisputably a private entity. Compl. ¶ 2.

NewsGuard's Misinformation Fingerprints contract with the government does not render it a state actor. It is well established that the acts of a private corporation "do not become acts of the government by reason of [its] significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982). The Supreme Court recently reiterated this fundamental principle in *Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802 (2019). There, film producers brought First Amendment claims against a private nonprofit corporation that contracted with the City of New York to operate public cable channels, alleging that the corporation violated their free speech rights when it restricted their access to those channels. The Supreme Court held that the First Amendment claims failed because the corporation was not a state actor, even though the corporation was "heavily regulate[d]" and operated public access channels that a local government could "choose[] to itself operate" as a matter of state law. *Id.* at 806, 814. Because operation of a public access channel was not a "traditional, exclusive public function," the private company's government contract did not turn it into a state actor. *Id.* at 814; *see also, e.g.*, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 358 (1974) ("heavily regulated, privately owned utility" was not a state actor).

*Rendell-Baker* and *Halleck* make clear that NewsGuard is not a state actor. Consortium News' threadbare allegation that NewsGuard works "in the intelligence field, a traditional function

10

of government," Compl. ¶ 27, falls far short of plausibly alleging that NewsGuard exercises powers both "traditionally *and* exclusively" performed by the government.  *Halleck*, 587 U.S. at 809 (emphasis in original).  Indeed, the Supreme Court has only ever identified two traditional and exclusive governmental functions—running elections and operating a company town.  *Id*. Intelligence gathering, by contrast, is not the exclusive domain of the government:  Countless private entities—including journalists, private investigators, and national security-focused consultants and technology companies—also engage in intelligence gathering.   In short, NewsGuard does not exercise any "'function' traditionally exclusively reserved to the State" when it gathers information under its Misinformation Fingerprints Program about the origin of publicly disseminated false narratives.  *Halleck*, 587 U.S. at 804 (quoting *Jackson*, 419 U.S. at 352).

Outside the narrow setting of traditional, exclusive governmental functions, the Second Circuit has emphasized that the "decisive factor" in determining whether an entity is a state actor is "the amount of control" the government exercises over the private entity's "internal management decisions."  *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 269 (2d Cir. 2014); *see also Gitter v. Target Corp*., 2015 WL 5710454, at *3 (S.D.N.Y. Sept. 29, 2015) ("Even where an entity has a contract with the government . . . courts examine the degree of control the government exercises over the entity's decision-making."). Allegations of government control over NewsGuard's management decisions are wholly absent from the Complaint.  For example, the Complaint does not identify a single current government official on NewsGuard's Board of Directors or Advisory Board or a single NewsGuard employee, director, or Advisory Board member appointed by the government.  *See Grogan*, 768 F.3d at 269 (no state action where the government entity does not "appoint[] any portion of [defendant's] Board or ha[ve] any say in [defendant's] management or personnel decisions").  Conclusory allegations that NewsGuard "is

working with the [U.S.] Intelligence Community" or "is closely associated with the U.S. intelligence and defense community," Compl. ¶¶ 22–23, are insufficient to transform a private company into a state actor.

### C.  Consortium News Was Not Punished Or Otherwise Coerced.

Even if NewsGuard were plausibly alleged to be a state actor, the First Amendment claim would nevertheless fail because "[w]hen it acts as a speaker, the government is entitled to favor certain views over others."  *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 34 (2d Cir. 2018). Consortium News alleges that NewsGuard violated the First Amendment by working with the United States "to publicly label, target and stigmatize news organizations" that "differ or dissent from U.S. policy in connection with Russia or Ukraine."  Compl. ¶ 151.  But the government is free to "say what it wishes and select the views that it wants to express."  *Nat'l Rifle Ass'n of Am. v. Vullo*, -- S. Ct. --, 2024 WL 2751216, at *6 (May 30, 2024) (internal quotation marks and citation omitted).  Only when the government engages in conduct "reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech" does government speech become unconstitutional coercion.  *Id.* at *8.

To determine whether government speech is coercive, courts must consider (1) "the speech's tone and content," (2) "whether the [entity] has 'regulatory or other direct decisionmaking authority,'" (3) "whether the perceived threat had a 'demonstrable' impact," and (4) "whether the speech 'referred to . . . adverse consequences that might be suffered.'"  *Volokh v. James*, 2024 WL 1905784, at *2 (S.D.N.Y. Apr. 30, 2024) (collecting cases).  Here, both NewsGuard's email outreach to Consortium News and the Nutrition Label itself are "written in an evenhanded, nonthreatening tone and employed words intended to persuade rather than intimidate" and therefore "do[] not constitute an attempt to coerce."  *Id.*; *see also X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 71 (2d Cir. 1999) (legislators' statement accusing security company "of being part of a

'hate group' that practiced racism, gender discrimination, anti-semitism, and other religious discrimination" did not constitute coercion).  Nor does NewsGuard have any "regulatory or other direct decisionmaking authority" over Consortium News.  In addition, the Complaint "fails to make any allegation that [NewsGuard's speech] had any impact on [Consortium News] at all." *Volokh*, 2024 WL 1905784, at *3.  And the sole "punishment" or "adverse consequence[]" Consortium News alleges—that NewsGuard expressed opinions questioning the credibility of its reporting, Compl. ¶¶ 52–54—falls far short of pleading unconstitutional coercion.  *See Volokh*, 2024 WL 1905784, at *2; *cf. Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 59–62 (1983) (unconstitutional coercion where state commission used its power to investigate and recommend criminal prosecution to censor ostensibly "objectionable" publications and sent police departments lists of such publications); *PEN Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 327 (S.D.N.Y. 2020) (unconstitutional coercion where government official threatened to revoke security clearances).

### D.  Consortium News Cannot Recover Injunctive Relief Or Damages Under The First Amendment.

Consortium News seeks two remedies: (1) a permanent injunction, preventing NewsGuard from rating Consortium News and, more broadly, from publishing or causing to be published "any reports, articles or other statements relating to information, findings or conclusions that arise from the Misinformation Fingerprints program" and (2) "compensatory and punitive or special damages."  Compl. at 45–46.  Neither remedy is available.

First, Consortium News has not plausibly alleged a prospective First Amendment injury necessary to confer Article III standing for its injunctive relief claim.  To obtain injunctive relief, a plaintiff "must show a likelihood that [it] will be injured in the future."  *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021).  Consortium News' First Amendment claim is based on "a contract between NewsGuard's 'Misinformation Fingerprints' program and the Department of

Defense Cyber Command."  Compl. at 1.  That contract ran from September 7, 2021, to December 8, 2022, Compl. ¶ 19; ECF No. 5-1, and is now complete.  The Complaint fails to allege any ongoing or future contract between NewsGuard and the United States.  Thus, even if Consortium News had stated a plausible First Amendment claim, its request for injunctive relief would still require dismissal because there is no indication that NewsGuard is "currently" engaged in unconstitutional conduct or "intend[s] to do so in the near future."  *Pan Am. World Airways, Inc. v. Flight 001, Inc.*, 2007 WL 2040588, at *6 (S.D.N.Y. July 13, 2007).

Second, Consortium News lacks a private right of action to recover monetary damages for an alleged First Amendment injury because the Supreme Court has "never held that *Bivens*"—the Court's limited authorization for monetary damages for a narrow class of constitutional violations by federal officials—"extends to First Amendment claims," *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012), and recently held that "there is no *Bivens* action for First Amendment retaliation," as "Congress, not the courts, is better suited to authorize such a damages remedy," *Egbert v. Boule*, 596 U.S. 482, 499 (2022).  The Supreme Court has also "foreclose[d] the extension of *Bivens* to private entities," even when engaged in state action.  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 n.2 (2001); *see also Shapiro v. Goldman*, 2016 WL 4371741, at *9 (S.D.N.Y. Aug. 15, 2016) ("The Supreme Court has held that *Bivens* actions may not be brought against . . . a private entity . . . even if acting under color of federal law"), *aff'd*, 696 F. App'x 532 (2d Cir. 2017). Accordingly, Consortium News has no viable remedy for the alleged First Amendment violation.[2]

## II.   Consortium News' Defamation Claim Should Be Dismissed.

Consortium News falls far short of pleading an actionable claim for defamation.  "[I]n

---

[2] To the extent the Complaint attempts to allege a violation of the Fifth Amendment, the handful of bare references to the Fifth Amendment are patently insufficient.  *See* Compl. ¶¶ 4, 157.

defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015). "Because a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage." *Cummings v. City of New York*, 2020 WL 882335, at *15 (S.D.N.Y. Feb. 24, 2020).

Consortium News challenges two categories of statements: (1) NewsGuard's characterization of Consortium News as "anti-U.S.," Compl. ¶¶ 179–82, and (2) NewsGuard's evaluation of Consortium News' credibility, *id.* ¶ 135. Both categories of statements are non-actionable expressions of opinion. *See, e.g.*, *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997); *Brian v. Richardson*, 87 N.Y.2d 46, 50–54 (1995). In addition, Consortium News has not plausibly alleged the falsity of the statements at issue, and the "anti-U.S. perspective" characterization does not harm Consortium News' reputation. *See Goldman v. Abraham Heschel Sch.*, 2024 WL 2278980, at *1 (1st Dep't May 21, 2024) ("The complaint failed to state a claim for defamation because defendant's statements . . . were nonactionable expressions of opinion and were substantially true."). Finally, Consortium News does not plausibly allege actual malice.

## A. Consortium News Does Not Plausibly Allege A False Statement Of Fact

### i. The Alleged Statements Are Protected Opinion

"Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Cummings v. City of New York*, 2022 WL 2166585, at *3 (2d Cir. June 16, 2022); *see generally Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) ("[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional

protection."); *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000) ("[T]he New York Constitution provides for absolute protection of opinions.").  "Whether a statement is a fact or opinion is a question of law for the courts, to be decided based on what the average person hearing or reading the communication would take it to mean and is appropriately raised at the motion to dismiss stage."  *Dfinity Found. v. New York Times Co.*, 2023 WL 7526458, at *3 (S.D.N.Y. Nov. 13, 2023) (internal quotation marks and alterations omitted).

Under New York law, courts look to three factors in determining whether a statement is protected opinion: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact."  *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (1993) (internal quotation marks and alterations omitted).  The plaintiff bears the burden of establishing that "a disputed statement is not protected opinion."  *Celle*, 209 F.3d at 179. Consortium News has failed to meet that burden.

First, Consortium News alleges that NewsGuard defamed it in describing it as "[a] website that covers international politics from a[n] . . . anti-U.S. perspective."  Compl. ¶ 51.  The phrase "anti-U.S. perspective" is a classic example of the "loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies."  *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284 (1974).  It can refer to a broad range of sentiments and positions regarding the United States, its government, or any of its policies.  Like the word "traitor" or "fascist," "anti-U.S." has no precise meaning and "cannot be construed as [a] representation[] of fact."  *Id.*; *see also, e.g.*, *Brimelow v. N.Y. Times Co.*, 2020 WL 7405261, at *6

(S.D.N.Y. 2020) (Failla, J.), (description of plaintiff as "white nationalist" was protected opinion), *aff'd*, 2021 WL 4901969 (2d Cir. 2021); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 553–54 (S.D.N.Y. 2020) (term "xenophobic" is protected opinion); *Ratajack v. Brewster Fire Dep't Inc.*, 178 F. Supp. 3d 118, 165–66 (S.D.N.Y. 2016) (nonactionable opinion to call plaintiff a "racist"); *Finkelstein v. Wachtel*, 2003 WL 1918309, at *6–7 (S.D.N.Y. Apr. 21, 2003) (statements that company's leader was a "crook" who ran a "very dirty business" were protected opinion).  In fact, this Court has previously held that accusations of being "anti-American," like accusations of being "anti-Semitic," are "expressions of opinion." *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 512 (S.D.N.Y. 2012).  Because the phrase "anti-U.S." does not have a "precise meaning which is readily understood," it constitutes protected opinion.  *Brian*, 87 N.Y.2d at 51.

Second, NewsGuard's Nutrition Label assessing Consortium News' trustworthiness also is protected opinion.  The Nutrition Label is an evaluative rating system that, as a matter of law, is "inherently subjective" and "incapable of being proven false." *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 541 (S.D.N.Y. 2018); *see also Themed Restaurants, Inc. v. Zagat Survey, LLC*, 21 A.D.3d 826, 827 (1st Dep't 2005) ("[R]atings and reviews almost invariably constitute expressions of opinion").  For example, statements that Consortium News "does not meet *NewsGuard*'s standard for having effective corrections practices," or that "*NewsGuard has determined*" Consortium News fails to "present information responsibly," *see* ECF No. 5-5 at 7 (emphasis added), are not likely to be understood by the reasonable reader as assertions of provable fact—and read in context, they cannot be.  NewsGuard's Ratings Criteria explains that "NewsGuard ratings involve human judgment to assess a site's performance on each of the nine criteria." ECF No. 3-2, at 7.  Likewise, the descriptions of the specific ratings criteria—for example, whether content providers are "generally fair"—underscore that the ratings are subjective judgments or opinions.  *Id.* at 4.

Consortium News also alleges that "reasonable people (and news organizations) have reached a divergent set of views as to" the topics underlying NewsGuard's rating, such as "the widespread influence of neo-Nazis in Ukraine." Compl. ¶ 105. NewsGuard's rating is just one view among many on this topic and, therefore, a textbook definition of what constitutes protected opinion. *See Galasso v. Saltzman*, 42 A.D.3d 310, 311 (1st Dep't 2007) ("subjective context" rendered statements non-actionable opinion).

"[T]he statements of opinion" at issue are also "nonactionable on the additional basis that there was full disclosure of the facts supporting the opinions." *Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055 (2d Dep't 2015). This is not a case of actionable "mixed opinion" where "the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986). Rather, the statements at issue are "pure opinion"—statements of opinion "accompanied by a recitation of the facts upon which [they are] based." *Id.*; *see also Gross*, 82 N.Y.2d at 154 ("[A] proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture"). In particular, the Nutrition Label that NewsGuard developed for Consortium News recites in detail the factual basis for the contested statements. *See* ECF No. 5-5. With respect to Consortium News' "anti-U.S. perspective," the label notes that "[t]he site's commentary is frequently critical of the foreign policy of the U.S. and other Western countries, often describing them as 'imperialistic,'" and gives examples, such as a May 2022 opinion article that described the United States as "the most tyrannical and murderous regime on earth, by a truly massive margin," and a February 2022 article stating that the United States government "act[ed] foolishly and against [its] best interest" in Ukraine. ECF No. 5-5, at 2–3. A "reasonable reader would understand" that the "anti-U.S." description was based on Consortium News' articles

criticizing the United States' "imperialistic" involvement in Ukraine, which the Nutrition Label "described in detail." *Frascatore v. Blake*, 344 F. Supp. 3d 481, 497 (S.D.N.Y. 2018).

Likewise, with respect to Consortium News' credibility, the Nutrition Label cites numerous examples of specific claims that it characterized as false, detailing with respect to each the date and title of the article, the specific false claim, and what NewsGuard understands to be true. For instance, Consortium News claimed that the allegations that Russia interfered in the 2016 presidential election were "false[]" and a "hoax." ECF No. 5-5 at 3. In the Nutrition Label, NewsGuard explained its understanding that "Russia did interfere in the 2016 U.S. presidential campaign in numerous ways," including by exposing data from the Democratic National Committee, running influence campaigns on social media platforms to amplify divisions, and gaining access to parts of U.S. local electoral systems. *Id.* at 3–4. All told, NewsGuard provided six pages of detailed explanations and two pages of citations in support of its determination that "ConsortiumNews.com has published many false and misleading claims." *Id.* at 3–8.

*Ganske* confirms that the challenged statements are opinions. 480 F. Supp. 3d at 552. In that case, a journalist brought defamation claims over a tweet calling him "xenophobic" and accusing him of "personally spread[ing] Russian bots on [his] own site." *Id.* at 547. The court held that both statements were opinion: the term "xenophobic," like "anti-U.S.," "is not capable of being proven true or false," *id.* at 553, while the statement that the plaintiff spread Russian bots, while "capable of being proven true or false," was not actionable because the tweet included a hyperlink, which was "a sufficient means of disclosing a factual basis on which an opinion rests." *Id.* at 554; *see also Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D. 3d 32, 44 (1st Dep't 2011) (statements in an email "prompted by or responsive to a hyperlink" were "pure opinion" because they were "accompanied by a recitation of the facts upon which [they were] based"); *Mirage*

*Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 37–38 (S.D.N.Y. 2018) (dismissing defamation claim where factual basis for opinion was linked to).

So too, here, the "red flag" text that appears when a NewsGuard user searches for Consortium News stating that Consortium News covers politics from an "anti-U.S. perspective," "has published false claims," and "fails to adhere to several basic journalistic standards" links clearly to "the full nutrition label" explaining at length the factual basis for those assertions. Compl. ¶¶ 49–52 & ECF No. 3-1 at 2–3. Because NewsGuard's statements are opinions "accompanied by a recitation of the facts," no claim for defamation can lie. *Frascatore*, 344 F. Supp. 3d at 497.

### ii.   Even If They Were Not Protected Opinion, Consortium News Has Not Plausibly Alleged That The Challenged Statements Are False

To state a claim for defamation, Consortium News must plead facts establishing the substantial falsity of the allegedly defamatory statement. *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017); *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (1st Dep't 2015). "If an allegedly defamatory statement is 'substantially true,' a claim of libel is 'legally insufficient and . . . should [be] dismissed.'" *Franklin*, 135 A.D.3d at 94 (quoting *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012)); *see also, e.g.*, *Leidig v. BuzzFeed, Inc.*, 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019) ("Where the substance, the gist, or the sting of a statement is true, it cannot be libelous.") (alterations and internal quotation marks omitted), *aff'd*, 788 F. App'x 76 (2d Cir. 2019). Even if the challenged statements are treated as statements of fact rather than opinion, they are substantially true.

With respect to the statement that Consortium News has an "anti-U.S. perspective," Consortium News does not deny espousing such a perspective. To the contrary, Consortium News acknowledges that it "criticize[s]" American policy." Compl. ¶ 180; *see id.* ¶ 10 (Consortium

20

News journalists' work is "often critical of U.S. policy"); ECF No. 3-3 (Consortium News editor-in-chief expressing pride in "criticiz[ing] our own government's policies").  And it touts the fact that several of its articles "challenge or dispute U.S. foreign and defense policies concerning Russia, Ukraine and Syria."  Compl. at 3.  In fact, the gravamen of Consortium News' Complaint is that Defendants are colluding to discourage or eliminate "views that differ or dissent from policies of the United States and its allies," like those espoused by Consortium News.  *Id*. ¶ 24; *see id*. ¶¶ 47, 65, 83(a), 91(a), 106(a), 117(a), 135(a), 142, 151–52, 155.  "As the 'sting' of the [purportedly] inaccurate statement is the same as that of the truth, it cannot support an action for defamation."  *Blair v. Inside Ed. Prods*., 7 F. Supp. 3d 348, 360 (S.D.N.Y. 2014).[3]

Likewise, to state a claim for defamation based on NewsGuard's alleged representation that Consortium News publishes "false" information, *see* Compl. ¶¶ 166–69, Consortium News must establish that the information it published—e.g., that "Washington organized a coup" in Ukraine, Compl. ¶ 74, that Ukraine is "Nazi-infested," *id.* ¶¶ 92–93, and that "[t]he Ukrainian government has overtly genocidal policies toward Russian minorities," *id.* ¶ 84—is true.  But Consortium News does not plead facts establishing the truth of these statements or the falsity of NewsGuard's characterization.  By Consortium News' own admission, its assertion that the United States "'organized' a coup" in Ukraine in 2014 was "*a* reasonable interpretation," *id.* ¶ 82 (emphasis added), impliedly among others, while its writers' conclusions as to the influence of neo-Nazis in Ukraine were "a matter of interpretation and inference," *id.* ¶ 98.  Similarly, though

---

[3] Consortium News' proud embrace of its "dissenting . . . views," Compl. at 4, also dooms its defamation claim in another respect.  To be actionable as defamation, the phrase "anti-U.S." must tend to injure the reputation of the plaintiff in society.  *See, e.g.*, *Levin*, 119 F.3d at 195.  Consortium News, which describes itself as a news outlet that "frequently challeng[es] U.S. governmental or foreign policy," Compl. ¶¶ 6, 10, cannot plausibly allege that the "anti-U.S." label injures the reputation of an organization that highlights its frequent opposition to U.S. policy.

Consortium News wrote that "[t]he Ukrainian government has overtly genocidal policies toward Russian minorities" in the Donbas, Consortium News' editor-in-chief stated "that the site has not taken a position on whether a genocide has occurred in Donbas," which he called "an arguable point." ECF No. 5-5. Consortium News does not claim—nor could it—that what it reported is indisputably true, defeating a claim for defamation based on statements that its reporting is "false."

### B. Consortium News Does Not Plausibly Allege Actual Malice.

Consortium News' defamation claim also fails because it does not plausibly allege actual malice. When a public figure brings a defamation claim, the First Amendment requires a showing that the defendant acted with actual malice. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964). The actual malice standard imposes on the plaintiff "a heavy burden of proof, a burden that is designed to assure to the freedoms of speech and press that breathing space essential to their fruitful exercise." *Contemp. Mission, Inc. v. N.Y. Times Co*., 842 F.2d 612, 621 (2d Cir. 1988) (internal quotation marks and citations omitted); *accord Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342–43 (1974) (actual malice standard is a "powerful antidote to the inducement to media self-censorship of the common-law rule of strict liability for libel" and means that "many deserving plaintiffs, including some intentionally subjected to injury," will be unable to recover).

"Those who have voluntarily sought and attained influence or prominence in matters of social concern are generally considered public figures." *Celle*, 209 F.3d at 176. Consortium News does not and cannot dispute that—as a news outlet that seeks to influence public opinion through articles posted on its publicly accessible website—it is a public figure. *See, e.g.*, Compl. ¶ 13 (alleging that its editor-in-chief "has made numerous media appearances"); ¶ 16 (alleging that it is an organization comprising individuals "who have worked at the highest and most respected levels of public life"); ¶¶ 70, 159(a), 165, 178, 182, 188, 193 (acknowledging application of actual malice standard); *see also Brimelow*, 2021 WL 4901969, at *2 (plaintiff who was alleged to have "had a

long and distinguished career as a writer and journalist" was a public figure).[4]

Accordingly, even if this Court finds the statements in question to be factual statements that are not substantially true, Consortium News still must plausibly allege that NewsGuard published the allegedly defamatory statements with knowledge of their falsity or with reckless disregard as to whether they were false or not.  *See N.Y. Times*, 376 U.S. at 280.  "The reckless conduct needed to show actual malice is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing, but by whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."  *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (internal quotation marks and citations omitted).  Consortium News cannot meet that "heavy burden."  *Contemp. Mission*, 842 F.2d at 621.

The Complaint contains virtually no non-conclusory allegations of actual malice.  Indeed, far from alleging that NewsGuard knew its statements to be false, Consortium News effectively concedes the truth of the "anti-U.S. perspective" label, Compl. at 3–4, ¶¶ 6, 10, 180, and acknowledges that "reasonable people" could differ as to the truth or falsity of its reporting, *id.* ¶ 105, undercutting any suggestion that NewsGuard knew its criticisms to be false and published those criticisms despite knowing them to be false.  And, Consortium News further concedes that it failed to respond to NewsGuard's queries about the accuracy of its reporting.  *Id.* ¶¶ 73 n.5, 123. These allegations are fatal to any plausible showing of actual malice.

Consortium News' actual malice argument rests principally on an email from NewsGuard

---

[4] Consortium News' letter in opposition to NewsGuard's pre-motion letter stated that the actual malice standard applies only to public officials but not to public figures more generally.  That is wrong and has been for more than half a century.  *See Gertz*, 418 U.S. at 343 (holding that actual malice standard applies to public figures); *see also Curtis Publishing Co. v. Butts*, 288 U.S. 130, 164–65 (1967) (Warren, C.J., concurring) (same).

reporter Zachary Fishman to Consortium News editor Joe Lauria acknowledging that Consortium News in some circumstances publishes corrections.  Compl. ¶¶ 162–64.  Read in context, Mr. Fishman's email was pointing out that, although Consortium News was obviously capable of issuing corrections because it sometimes does so, it failed to do so for many articles that Mr. Fishman "previously identified as false"; Mr. Fishman therefore questioned whether "Consortium News' correction practices are effective."  ECF No. 3-3 at 7.  Nothing in Mr. Fishman's email is inconsistent with NewsGuard's ultimate conclusion that, while "ConsortiumNews.com regularly corrects errors," "the site has left many articles with false claims uncorrected," and therefore "does not meet NewsGuard's standard for having effective corrections practices."  ECF No. 5-5 at 7. Consortium News thus falls far short of meeting its heavy burden to show that NewsGuard knew its rating to be false or acted with reckless disregard of its truth or falsity.

Consortium News also argues that NewsGuard acted with actual malice because its reporter stated that the website published "false content" before giving Consortium News an opportunity to respond.  Compl. ¶ 72.  But even if Consortium News had responded in a timely fashion and denied that it was "anti-U.S." and "published false claims," that too would be insufficient: "denials without more do not support a plausible claim of actual malice."  *Brimelow*, 2021 WL 4901969, at *3; *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) (actual malice "cannot be predicated on mere denials, however vehement").

Finally, Consortium News' allegation that NewsGuard acted with actual malice because it applied a flag to the entirety of Consortium News' site when it reviewed only some, but not all, of its articles also lacks merit.  Compl. ¶ 70.  "[S]uch assertions raise only a challenge to the reasonableness of [NewsGuard's] methodology, sounding in negligence and lacking the requisite claim" of actual malice.  *Themed Restaurants, Inc. v. Zagat Surv., LLC*, 4 Misc. 3d 974, 982–83

(Sup. Ct. N.Y. Cnty. 2004), *aff'd*, 21 A.D.3d 826.   Moreover, NewsGuard's thoroughness in researching its claims, including by communicating directly and repeatedly with Consortium News representatives, weighs heavily against a showing of actual malice.   *See Prince v. Intercept*, 634 F. Supp. 3d 114, 140 (S.D.N.Y. 2022) (dismissing defamation claim for lack of actual malice where "Defendants substantiated some of the[ir] claims"); *Freeman v. Johnston*, 192 A.D.2d 250, 252 (1st Dep't 1993) ("no constitutional malice" where defendant "properly researched" allegedly defamatory claims), *aff'd*, 84 N.Y.2d 52 (1994).   And even if NewsGuard had not undertaken that thorough diligence, "failure to investigate does not in itself establish bad faith."   *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968); *see also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ("[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."); *McDougal*, 489 F. Supp. 3d at 185 (allegations that speaker "should have investigated his claims further before speaking" are insufficient to establish actual malice).[5]

## CONCLUSION

The Second Amended Complaint should be dismissed with prejudice.   "Leave to amend would be futile because plaintiff has already had two bites at the apple and they have proven fruitless."   *Williams v. Calderoni*, 2012 WL 691832, at *8 (S.D.N.Y. 2012), *aff'd sub nom.*, *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013).

---

[5] Consortium News seeks an injunction as well as damages on its defamation claim.  "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and therefore come with "a 'heavy presumption' against [their] constitutional validity," *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971); *accord People ex rel. Arcara v. Cloud Books, Inc.*, 68 N.Y.2d 553, 558 (1986).  Consortium News has not alleged immediate and irreparable public injury or otherwise pled facts to meet its heavy burden.

Dated:   June 11, 2024                    Respectfully submitted,
         New York, NY


                                          GIBSON, DUNN & CRUTCHER LLP


                                          By:  */s/ Theodore J. Boutrous Jr.*


                                                Theodore J. Boutrous Jr.
                                                GIBSON, DUNN & CRUTCHER LLP
                                                333 South Grand Avenue
                                                Los Angeles, CA 90071
                                                Tel: (213) 229-7000
                                                TBoutrous@gibsondunn.com

                                                Amir C. Tayrani (*pro hac vice*)
                                                GIBSON, DUNN & CRUTCHER LLP
                                                1050 Connecticut Avenue, N.W.
                                                Washington, D.C. 20036
                                                Tel: (202) 955-8500
                                                ATayrani@gibsondunn.com

                                                Alexandra Perloff-Giles
                                                GIBSON, DUNN & CRUTCHER LLP
                                                200 Park Avenue
                                                New York, NY 10166
                                                Tel: (212) 351-4000
                                                APerloff-Giles@gibsondunn.com

                                                *Counsel for Defendant NewsGuard*
                                                *Technologies, Inc.*