**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CONSORTIUM FOR INDEPENDENT
JOURNALISM, INC.,

                        Plaintiff,

      v.

NEWSGUARD TECHNOLOGIES, INC. and
UNITED STATES OF AMERICA,

                      Defendants.

No. 23 Civ. 7088 (KPF)

 

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES OF AMERICA'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2741/2822

Email: dana.walsh.kumar@usdoj.gov
       alyssa.o'gallagher@usdoj.gov

DANA WALSH KUMAR
ALYSSA B. O'GALLAGHER
Assistant United States Attorneys
   – Of Counsel –

### TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT FACTUAL BACKGROUND ............................................................................. 2

    A.    NewsGuard's Red Flags and Nutrition Labels ...................................................... 2

    B.    The Contract Between the Government and NewsGuard ...................................... 4

    C.    NewsGuard's Flagging and Labeling of Plaintiff .................................................. 5

    D.    Plaintiff's Claims ..................................................................................................... 6

LEGAL STANDARD ............................................................................................................ 7

ARGUMENT .......................................................................................................................... 8

I.      THE COURT SHOULD DISMISS THE SECOND AMENDED COMPLAINT AS TO THE GOVERNMENT FOR LACK OF SUBJECT MATTER JURISDICTION .............. 8

    A.    Plaintiff Lacks Article III Standing to Assert its First Amendment Claim for Declaratory and Injunctive Relief Against the United States ................................. 8

    B.    The Government Has Not Waived its Sovereign Immunity as to Any First Amendment Claim for Damages Against the United States ................................. 11

II.    THE COURT SHOULD DISMISS THE SECOND AMENDED COMPLAINT AS TO THE GOVERNMENT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ................................................................................................... 12

    A.    The Second Amended Complaint Fails to State a Plausible First Amendment Claim ........................................................................................................................ 12

    B.    The Second Amended Complaint Fails to State a *Bivens* Claim .......................... 14

CONCLUSION ...................................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

*Page(s)*

*Cases*

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009) ................................................................ 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................ 7, 15, 16

*Bacon v. Phelps*,
    961 F.3d 533 (2d Cir. 2020) ................................................................ 18

*Bantam Books, Inc. v. Sullivan*,
    372 U.S. 58 (1963) ................................................................ 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................ 7

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971) ................................................................ 15

*Cacchillo v. Insmed, Inc.*,
    638 F.3d 401 (2d Cir. 2011) ................................................................ 8

*Carlson v. Green*,
    446 U.S. 14 (1980) ................................................................ 15

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016) ................................................................ 8, 10

*Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*,
    333 U.S. 103 (1948) ................................................................ 18

*City of L.A. v. Lyons*,
    461 U.S. 95 (1983) ................................................................ 9, 10

*Cohen v. United States*,
    640 F. Supp. 3d 324 (S.D.N.Y. 2022) ................................................................ 16, 18

*Correctional Services Corp. v. Malesko*,
    534 U.S. 61 (2001) ................................................................ 18

*County of Suffolk v. Sebelius*,
    605 F.3d 135 (2d Cir. 2010) ................................................................ 11

*Davila v. Gutierrez*,
  330 F. Supp. 3d 925 (S.D.N.Y. 2018) ............................................................ 12

*Davis v. Passman*,
  442 U.S. 228 (1979).......................................................................................... 15

*Dorce v. City of New York*,
  2 F.4th 82 (2d Cir. 2021) ............................................................................ 9, 10

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
  747 F.3d 145 (2d Cir. 2014) ............................................................................. 9

*Egbert v. Boule*,
  596 U.S. 482 (2022)............................................................................ 15, 16, 17

*FDIC v. Meyer*,
  510 U.S. 471 (1994).......................................................................................... 12

*Hernandez v. Mesa*,
  589 U.S. 93 (2020)...................................................................................... 16, 18

*Hester v. French*,
  511 F. Supp. 3d 482 (D. Vt. 2021) ................................................................. 11

*Hu v. City of New York*,
  927 F.3d 81 (2d Cir. 2019) ................................................................................ 7

*Keene Corp. v. United States*,
  700 F.2d 836 (2d Cir. 1983) ........................................................................... 12

*Lebron v. Rumsfeld*,
  670 F.3d 540 (4th Cir. 2012) .......................................................................... 18

*Long Island Radio Co. v. NLRB*,
  841 F.2d 474 (2d Cir. 1988) ........................................................................... 12

*Luckett v. Bure*,
  290 F.3d 493 (2d Cir. 2002) .............................................................................. 7

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ......................................................................... 7, 12

*Matal v. Tam*,
  582 U.S. 218 (2017).......................................................................................... 13

*Nat'l Rifle Ass'n of Am. v. Vullo*,
  144 S. Ct. 1316 (2024)............................................................................... 13, 14

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ............................................................................ 9, 10

*Okwedy v. Molinari*,
  333 F.3d 339 (2d Cir. 2003) ................................................................................ 14

*Payne v. Malemathew*,
  No. 09 Civ. 1634 (CS), 2011 WL 3043920 (S.D.N.Y. July 22, 2011) .................................... 15

*Pleasant Grove City v. Summum*,
  555 U.S. 460 (2009) .......................................................................................... 13

*Raines v. Byrd*,
  521 U.S. 811 (1997) ............................................................................................ 8

*Rasul v. Myers*,
  563 F.3d 527 (D.C. Cir. 2009) .............................................................................. 18

*Reichle v. Howards*,
  566 U.S. 658 (2012) .......................................................................................... 17

*Robinson v. Overseas Mil. Sales Corp.*,
  21 F.3d 502 (2d Cir. 1994) .................................................................................. 12

*Schweiker v. Chilicky*,
  487 U.S. 412 (1988) .......................................................................................... 16

*Soule v. Connecticut Ass'n of Sch., Inc.*,
  90 F.4th 34 (2d Cir. 2023) ................................................................................... 11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................................ 8

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ............................................................................................ 8

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................................................ 9

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................................ 8

*Wandering Dago, Inc. v. Destito*,
  879 F.3d 20 (2d Cir. 2018) ................................................................................... 13

*Zherka v. Ryan*,
  52 F. Supp. 3d 571 (S.D.N.Y. 2014) ....................................................................... 17

*Ziglar v. Abbasi,*
    582 U.S. 120 (2017).............................................................................. 15, 16, 17, 18

**Statutes**

42 U.S.C. § 1983......................................................................................................... 14

Defendant the United States of America (the "United States" or the "Government"), by its attorney Damian Williams, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion to dismiss the Second Amended Complaint, Dkt. No. 36 ("Second Am. Compl."), of Plaintiff Consortium for Independent Journalism, Inc. ("Plaintiff" or "Consortium News"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The Government's many agencies enter into many different types of contracts with private companies every year.  From September 2021 to December 2022, the Government entered into one such contract with co-Defendant NewsGuard Technologies, Inc. ("NewsGuard"), which allowed the United States Cyber Command to access NewsGuard's "Misinformation Fingerprints" program, a service provided by NewsGuard concerning Russian propaganda and myths spread by websites and news organizations.  This contract expired in December 2022 and was never renewed. Consortium News brings this lawsuit alleging that, pursuant to this contract, NewsGuard flagged and labeled Consortium News articles as failing to adhere to basic journalistic standards.  It alleges that these actions violated the First Amendment and seeks declaratory and injunctive relief, as well as damages, for these alleged violations.

Plaintiff's First Amendment claim against the United States fails for two reasons.  First, the Court lacks subject matter jurisdiction over Plaintiff's First Amendment claim against the Government because (1) Plaintiff lacks standing to assert a First Amendment claim for equitable relief, and (2) there is no waiver of the United States' sovereign immunity with respect to any First Amendment claim for damages.

Second, the Second Amended Complaint fails to state a First Amendment claim.  The only

supposedly unconstitutional conduct alleged by Plaintiff is the labeling and flagging of articles published by Plaintiff indicating that those articles may not meet journalistic standards. This type of action, by the Government or by NewsGuard, does not violate the First Amendment as the Government is permitted to express its views. Any conclusory allegations of supposed coercion fall far short of the type of threatening or coercive Government action that might implicate the First Amendment. In addition, not only does the Court lack jurisdiction over a First Amendment claim for damages against the Government, but the Second Amended Complaint also fails to state such a claim pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*. There is no *Bivens* remedy for the First Amendment violations alleged because Plaintiff's claim indisputably arises in a new context, and special factors counsel hesitation in the absence of affirmative action by Congress.

For these reasons, all claims asserted against the Government must be dismissed.

## RELEVANT FACTUAL BACKGROUND

Plaintiff Consortium News is an "internet-based news, commentary and analysis provider dedicated to producing independent content or publishing guest content of an independent nature, frequently challenging U.S. governmental or foreign policy." Second Am. Compl. ¶ 6. Defendant NewsGuard is a company providing "'brand safety' validation services" for approximately 40,000 subscribers, who pay a monthly fee to receive ratings as to the safety of news and other content "produced by organizations whose articles appear on computer searches." *Id.* ¶ 31. NewsGuard provides services to "institutional, governmental and other clients, including libraries and universities, who pay NewsGuard for subscription and reporting services." *Id.*

### A. NewsGuard's Red Flags and Nutrition Labels

According to the Second Amended Complaint, NewsGuard provides to subscribers, among other services, "what it calls 'Nutrition Labels' for rating the 'trust[,]' reliability and ethics of news

organizations." *Id.* ¶ 32.  NewsGuard rates news sites "using nine basic, apolitical criteria of journalistic practice," and then each site is given a "trust score of 0-100 points" and a "detailed 'Nutrition Label,'" which includes examples of trust issues identified by NewsGuard. *Id.*  Plaintiff also alleges that "NewsGuard has historically attached to a subscriber's web search a red flag or shield that opens to a warning that viewers or readers should 'Proceed with caution' because a given news site 1) fails to meet journalistic standards, 2) fails to make corrections of false facts and 3) purveys false information, among other references." *Id.* ¶ 34.  These labels and red flags are allegedly attached "to the heading of any article on a NewsGuard subscriber's screen for any search reporting a result from a targeted news provider," and subscribers include libraries, as well as corporate and governmental entities. *Id.* ¶¶ 35–36.

Plaintiff alleges that before publishing a red flag warning, NewsGuard contacts a "targeted" news organization and "demand[s] to know if the targeted organization will 'correct' the offending material." *Id.* ¶ 41.  If the organization does not correct the information, NewsGuard publishes a red flag and "warning" stating, "Proceed with caution:  This website generally fails to maintain basic standards of accuracy and accountability." *Id.* ¶ 43 & Ex. A.[1]  NewsGuard also includes a "Nutrition Label" with a warning stating, "Proceed with caution:  This website fails to adhere to several basic journalistic standards." *Id.* ¶ 52.  The "Nutrition Label" features the "plac[ement of] a red 'X' next to certain 'credibility' items" to allegedly indicate that the news site failed to meet journalistic standards. *Id.* ¶ 53.  A news organization that refuses to make changes demanded by NewsGuard is allegedly "labelled and tagged" with red flags and "Nutrition Labels" "in [its] entire online production." *Id.* ¶ 44.  Plaintiff alleges that these actions of NewsGuard are "designed and intended to force targeted news organizations into withdrawing legitimate news and commentary."

---

[1] Exhibits referenced in the Second Amended Complaint appear at Dkt. Nos. 3 & 5.

*Id.* ¶ 46.

In addition, Plaintiff alleges that NewsGuard "issues periodic reports to its corporate and governmental subscribers containing similar information," including, for example, "a report identifying so-called 'Russian propaganda' outlets through its 'Misinformation Fingerprints' program that is the subject of its contract with the Department of Defense," as discussed below. *Id.* ¶ 39.

### B.  The Contract Between the Government and NewsGuard

In September 2021, the United States Air Force ("USAF") Research Lab – AFWERX awarded NewsGuard a "Misinformation Fingerprints" contract in the amount of $749,387, with a start date of September 7, 2021, and an end date of December 8, 2022. *Id.* ¶¶ 19, 138; *see generally* Declaration of Jonathan P. Bettin ("Bettin Decl.").  This contract allowed U.S Cyber Command— a division of the Department of Defense the mission of which is to direct, synchronize, and coordinate cyberspace planning and operations in order to defend and advance national interest, in collaboration with domestic and international partners—access to NewsGuard's "Misinformation Fingerprints" program.  Bettin Decl. ¶ 4.

According to the Second Amended Complaint, "Misinformation Fingerprints" is a NewsGuard program "concerning Russian 'propaganda' and 'myths' spread by websites and news organizations."  Second Am. Compl. ¶ 144.  Under the "Misinformation Fingerprints" contract with the Government, NewsGuard was to "identify media organizations, domestic or foreign, that report, publish, or disseminate what the government and NewsGuard claim to be Russian government 'narratives' and propaganda as to the Ukraine war and related matters."  *Id.* ¶ 3. Plaintiff also alleges that pursuant to this contract, NewsGuard was "paid to identify media organizations that provide information or reportage concerning Ukraine and Russia that dissent from or are contrary to the political and diplomatic positions or viewpoints of the U.S., its

intelligence agencies and U.S. allies." *Id.* ¶ 20.

In a March 10, 2023 email, NewsGuard's co-founder Gordon Crovitz wrote that part of NewsGuard's work for the Government "is focused on the identification and analysis of information operations targeting the U.S. and its allies conducted by hostile governments, including Russia and China." *Id.* ¶ 22 & Ex. K at 1. Crovitz further stated that NewsGuard's "analysts alert officials in the U.S. and in other democracies, including Ukraine, about new false narratives targeting America and its allies" and that they "provide an understanding of how this disinformation spreads online." *Id.* Ex. K at 1. Crovitz also noted that NewsGuard "oppose[s] any government involvement in rating news sources," and that is why their "work rating news sources and identifying false narratives being spread by foreign governments is entirely independent and free of any outside influence, including from the U.S. or any other government." *Id.*

The "Misinformation Fingerprints" contract between the Government and NewsGuard ended on December 8, 2022, and the Government has not entered into additional contracts with NewsGuard since then. Bettin Decl. ¶¶ 5–6.

### C. NewsGuard's Flagging and Labeling of Plaintiff

As alleged in the Second Amended Complaint, NewsGuard has disputed the content of only six of Plaintiff's articles, but, as a result, it applies its red flag and "Nutrition Label" to all subjects and articles published by Plaintiff, which Plaintiff claims is evidence that specific news organizations that challenge or dissent from U.S. policies are being targeted. Second Am. Compl. ¶¶ 57–69. The "Nutrition Label" accompanying Plaintiff's articles describes Plaintiff as "[a] website that covers international politics from a left-wing, anti-U.S. perspective that has published false claims about the Ukraine-Russia war and other international conflicts," *id.* ¶ 51 (emphasis omitted); and warns, "[p]roceed with caution: [t]his website fails to adhere to several basic

journalistic standards," *id.* ¶ 52 (emphasis omitted).  The "Nutrition Label" also includes placement of a red "X" indicating that Plaintiff repeatedly publishes false content, fails to regularly correct or clarify errors, and fails to gather and present information responsibly.  *Id.* ¶ 54.  The Second Amended Complaint does not allege any connection between the Government and NewsGuard's flagging and labeling of Plaintiff other than the "Misinformation Fingerprints" contract between the Government and NewsGuard.  *See, e.g.*, *id.* ¶¶ 3, 20, 24, 26, 136–157(a).

### D.  Plaintiff's Claims

Based on these allegations, Plaintiff asserts First Amendment claims against the Government and NewsGuard.  *Id.* ¶¶ 136–157(a).[2]  Plaintiff alleges that the United States "encouraged and facilitated the publication of warnings and advisories against" Plaintiff through its "*contract with NewsGuard*."  *Id.* ¶ 147 (emphasis added).  As the allegations make clear, the alleged First Amendment violations stemming from *NewsGuard's* flagging and labeling of Plaintiff are predicated on the existence of a contract between the United States and NewsGuard, pursuant to which this flagging and labeling was allegedly undertaken.  *Id.* ¶¶ 137–40, 142–43, 146, 150.

As relief for these alleged First Amendment violations, Plaintiff seeks declaratory and injunctive relief against the United States, including a declaration that the United States has violated the First Amendment and an order enjoining it from "publishing, releasing or causing to be released any reports, articles or other statements relating to information, findings or conclusions that arise from the Misinformation Fingerprints program" and from labeling Plaintiff's articles and videos.  *Id.* ¶ 157(a).  Plaintiff also seeks separate declaratory and injunctive relief against NewsGuard, including a declaration that the "Misinformation Fingerprints" program is

---

[2] Plaintiff also asserts common law defamation, libel, and slander claims against only NewsGuard.

unconstitutional and an order permanently enjoining it.  *Id.*  In addition to the prospective equitable relief sought, Plaintiff seeks monetary damages from both the United States and NewsGuard for violations of Plaintiff's First Amendment rights.  *Id.* [3]

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id.* at 496–97.

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court accepts well-pleaded factual allegations as true, "mere conclusory statements" and "legal conclusion[s] couched as . . . factual allegation[s]" are "disentitle[d] . . . to th[is] presumption of truth."  *Id.* at 678, 681.  In deciding a Rule 12(b)(6) motion, "the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken."  *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) (alteration,

---

[3] The Second Amended Complaint also contains three passing references to the Fifth Amendment of the U.S. Constitution.  *See* Second Am. Compl. ¶¶ 4, 157(a), Count I Prayer for Relief.  The single count brought against the Government, however, does not include the Fifth Amendment, *see id.* Count I, nor do any of Plaintiff's allegations relate to any purported Fifth Amendment violations.  Accordingly, any claim ostensibly brought against the Government under the Fifth Amendment should be dismissed under, at least, Rule 12(b)(6) for failure to state a claim.

citation, and internal quotation marks omitted).

## ARGUMENT

## I. THE COURT SHOULD DISMISS THE SECOND AMENDED COMPLAINT AS TO THE GOVERNMENT FOR LACK OF SUBJECT MATTER JURISDICTION

### A. Plaintiff Lacks Article III Standing to Assert its First Amendment Claim for Declaratory and Injunctive Relief Against the United States

Article III "standing is a federal jurisdictional question determining the power of the court to entertain the suit." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (internal quotation marks omitted). To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). These elements ensure "that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation and internal quotation marks omitted). "Since the elements of Article III standing are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citation omitted). And the "standing inquiry [must be] especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997). After all, "[f]ederal courts do not exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021).

Plaintiff lacks Article III standing to pursue its First Amendment claim for declaratory and injunctive relief against the United States because it has alleged only a past injury that would not

be redressed by prospective equitable relief against the United States.  "An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation and internal quotation marks omitted).  Where, as here, a plaintiff seeks prospective equitable relief, past injury alone will not suffice for Article III standing.  *See City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("[P]ast injuries . . . do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way.").  Rather, to seek such relief, a plaintiff "must establish how [it] will be injured prospectively."  *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (citation omitted).  To do so, a plaintiff must identify a continuing, present injury or a "real and immediate threat" of future injury.  *Lyons*, 461 U.S. at 102.

Here, Plaintiff's alleged injury is premised on the existence of a contract between NewsGuard and the Government, pursuant to which NewsGuard allegedly flagged and labeled Plaintiff's articles.  *See, e.g.*, Second Am. Compl. at 1 (the "violation of the First Amendment" is "accomplished by a contract" between the defendants); *see also id.* ¶¶ 3, 19–20, 24, 26, 29–30, 39, 42, 137–39, 143, 146–47, 150–51 (referencing the contract nearly 30 times throughout the Second Amended Complaint).  Though Plaintiff alleges that its injury is a continuing, present injury because the contract between NewsGuard and the Government is "continuing," *id.* ¶ 140, this general allegation is not entitled to the presumption of truth because it is "contradicted 'by more specific allegations in the Complaint,'" *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 152 (2d Cir. 2014) (citation omitted)—namely, the specific allegation that the contract *ended* on December 8, 2022, Second Am. Compl. ¶ 138.  Thus, Plaintiff's self-defeating allegations fail to plausibly suggest that it suffers a continuing, present injury sufficient for

standing to seek prospective equitable relief.

Moreover, the Government has proffered evidence that reveals the existence of factual problems with Plaintiff's standing allegations.  *See Carter*, 822 F.3d at 57 (on a Rule 12(b)(1) motion, a defendant may proffer evidence beyond the pleadings revealing the existence of factual problems in the assertion of jurisdiction).  Indeed, as the Bettin Declaration demonstrates, the contractual relationship between NewsGuard and the Government ended in December 2022, Bettin Decl. ¶ 6; NewsGuard delivered the final deliverable under the contract on April 16, 2023, *id.* ¶ 5; the Government made final payment on May 31, 2023, *id.*; and the Government and NewsGuard have not entered into any additional contracts since then, *id.* ¶ 6.  Accordingly, evidence beyond the pleadings affirmatively demonstrates that, contrary to Plaintiff's allegations, Plaintiff is not suffering an injury sufficient for standing based on a continuing contract between NewsGuard and the Government for the simple reason that there is no such continuing contract.[4]

The lack of a continuing contract between NewsGuard and the Government also precludes Plaintiff from establishing redressability for the equitable relief it seeks.  To satisfy Article III's

---

[4] Moreover, *continuing effects* from past wrongs do not suffice for standing for future-oriented equitable relief either.  *See Nicosia*, 834 F.3d at 239 (concluding that the plaintiff lacked standing to seek a preliminary injunction because he had not established a likelihood of future or continuing harm where he alleged that past purchases of a product resulted in injury and he "continue[d] to suffer consequences as a result," but he could not show that he was likely to be subjected to further sales of the product because the retailer had ceased selling it); *Dorce*, 2 F.4th at 96 ("That a past harm was severe or inflicts continuing damage does not change that rule: the remedy for continuing pain and suffering from a defendant's past damage is compensatory damages, as an injunction against future actions by a defendant does not remedy the harm done by that defendant's past acts.").  While Plaintiff could instead allege a certainly impending future injury, it has not done so here.  For example, it has not alleged that NewsGuard and the Government intend to renew the contract that ended in December 2022, or that NewsGuard and the Government intend to enter into a new one.  And "[p]ast wrongs" that Plaintiff alleges based on the prior contract, standing alone, "'do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy' with respect to potential future similar wrongs."  *Dorce*, 2 F.4th at 95–96 (quoting *Lyons*, 461 U.S. at 103).

redressability requirement, "a plaintiff must show that it is likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision." *Soule v. Connecticut Ass'n of Sch., Inc.*, 90 F.4th 34, 47 (2d Cir. 2023) (alteration, citation, and internal quotation marks omitted). Here, the equitable relief Plaintiff seeks against the United States would do nothing to redress the alleged injuries because no order or declaration against the *Government* could require *NewsGuard*—with which the Government has no continuing contractual relationship—to cease flagging and labeling Plaintiff. *Cf. A.H. by & through Hester v. French*, 511 F. Supp. 3d 482, 499 (D. Vt. 2021) (concluding that an injunction against the Secretary of the Vermont Agency of Education would not redress the plaintiffs' harm where the local school defendants made the determinations plaintiffs challenged).

Thus, Plaintiff lacks standing for its declaratory and injunctive relief claims against the Government, and those claims should be dismissed for lack of subject matter jurisdiction.

## B.  The Government Has Not Waived its Sovereign Immunity as to Any First Amendment Claim for Damages Against the United States

To the extent the Second Amended Complaint can be read to assert a *Bivens*-type claim for damages against the United States for violations of Plaintiff's First Amendment rights, *see* Second Am. Compl. ¶ 157(a) (seeking "unspecified monetary damages as a result of the harm [Plaintiff] has experienced from the above-described conduct of the United States, . . . in direct violation of the First . . . Amendment[]"), such a claim should be dismissed for lack of subject matter jurisdiction because there is no applicable waiver of the United States' sovereign immunity.

"Absent an unequivocally expressed statutory waiver, the United States, its agencies, and its employees (when functioning in their official capacities) are immune from suit based on the principle of sovereign immunity." *County of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (citation and internal quotation marks omitted). "Any waiver of the government's sovereign

immunity is to be strictly construed in favor of the government," *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir. 1988), and because "[t]he doctrine of sovereign immunity is jurisdictional in nature, . . . the plaintiff bears the burden of establishing that her claims fall within an applicable waiver," *Makarova*, 201 F.3d at 113 (citation omitted).

Here, Plaintiff fails to identify any applicable statutory waiver of the United States' sovereign immunity to assert a First Amendment claim for damages—nor could it, because none exists.  It is well settled that "Congress has not waived the United States' sovereign immunity with respect to constitutional tort claims."  *Davila v. Gutierrez*, 330 F. Supp. 3d 925, 937 (S.D.N.Y. 2018) (citing *FDIC v. Meyer*, 510 U.S. 471, 478 (1994)), *aff'd*, 791 F. App'x 211 (2d Cir. 2019).  Accordingly, constitutional tort claims "must be brought against individual federal agents or employees in their individual capacities through a *Bivens* action."  *Id.* (citing *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994)).   Because Plaintiff failed to bring its First Amendment claim for damages as a *Bivens* action against an individual federal officer and instead brought that claim against only the United States, *see* Second Am. Compl., Count I, the claim must be dismissed for lack of subject matter jurisdiction, *see id.*; *see also Keene Corp. v. United States*, 700 F.2d 836, 845 n.13 (2d Cir. 1983) (noting that courts in this Circuit "routinely dismiss[]" "*Bivens*-type actions against the United States" "for lack of subject matter jurisdiction").

## II.  THE COURT SHOULD DISMISS THE SECOND AMENDED COMPLAINT AS TO THE GOVERNMENT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.  The Second Amended Complaint Fails to State a Plausible First Amendment Claim

Plaintiff's First Amendment claim against the Government should also be dismissed for failure to state a claim because the alleged actions taken by NewsGuard and the Government— flagging dubious reporting—do not violate the First Amendment.  As the Supreme Court very

recently affirmed, when the Government speaks, it can "'say what it wishes' and 'select the views that it wants to express'" without running afoul of the First Amendment. *Nat'l Rifle Ass'n of Am. v. Vullo*, 144 S. Ct. 1316, 1326 (2024) (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009)). And this "makes sense," because "the government could barely function otherwise." *Id.* Indeed, "'[w]hen a government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others,' and thus does not need to 'maintain viewpoint-neutrality when its officers and employees speak about that venture.'" *Id.* (quoting *Matal v. Tam*, 582 U.S. 218, 234 (2017)); *see also Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 34 (2d Cir. 2018) ("When it acts as a speaker, the government is entitled to favor certain views over others.").

In support of its First Amendment claim against the Government, Plaintiff alleges only that (1) the Government entered into a contract (which has long since expired) with NewsGuard; (2) pursuant to the contract, NewsGuard was paid to identify media organizations that provide information concerning Ukraine and/or Russia that is contrary to the views of the United States; and (3) pursuant to the contract, NewsGuard flagged and labeled Plaintiff's news content by placing a red flag and "Nutrition Label" next to articles warning viewers with NewsGuard subscriptions to "[p]roceed with caution," as the content did not meet certain journalistic standards or standards of accuracy and accountability. Second Am. Compl. ¶¶ 19–20, 34, 43. Accepting all of these allegations as true, the alleged Government speech (through NewsGuard's flagging and labeling) does not violate the First Amendment, as the Government is not required to "maintain viewpoint-neutrality." *Matal*, 582 U.S. at 219. The Government is free to take positions, like, for example, flagging potential misinformation, without violating the First Amendment.[5]  *See Vullo*,

---

[5]  The Second Amended Complaint contains conclusory allegations that the Government "coerce[d] news organizations to alter viewpoints as to Ukraine and Russia." Second Am. Compl. ¶ 24. Yet

144 S. Ct. at 1326 ("A government official can share her views freely and criticize particular beliefs, and she can do so forcefully . . . ."); *see also id.* at 1332 ("[G]overnment officials [may] forcefully condemn[] views with which they disagree.").

Accordingly, the Second Amended Complaint fails to state a First Amendment claim.

### B.  The Second Amended Complaint Fails to State a *Bivens* Claim

As discussed above, any *Bivens*-type claim for damages against the United States for violations of Plaintiff's First Amendment rights should be dismissed for lack of subject matter jurisdiction and for failure to state a First Amendment claim.  *See supra* Argument, Sections I.B, II.A.  But even if Plaintiff could overcome these bases for dismissal by further amending its complaint, such a claim would still be subject to dismissal because there is no *Bivens* remedy for the violations alleged.[6]

*Bivens* is the "federal analog to suits brought against state officials under" 42 U.S.C.

---

these allegations fail to show any type of "threat of adverse government action" meant to punish or suppress the speech of Plaintiff or any other person or entity that might raise First Amendment concerns.  *See Vullo*, 144 S. Ct. at 1328.  Unlike in *Vullo* or cases where courts have found coercion, here, Plaintiff does not point to any threats made by the Government.  *See, e.g.*, *id.* at 1330 (allegations of "not-so-subtle, *sanctions-backed* threat to [company] to cut all business ties with the NRA" sufficient to state a First Amendment claim (emphasis added)); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 59–62 (1963) (state commission impermissibly used its power to investigate and recommend criminal prosecution to censor publications it viewed as objectionable); *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003) (complaint stated First Amendment claim where plaintiff "could have reasonably believed that [defendant] intended to use his official power to retaliate against it" by interfering with substantial economic benefits "if it did not respond positively to his entreaties").  Moreover, the Department of Defense in no way regulates Plaintiff nor could it take any retaliatory or enforcement actions against Plaintiff.  *Cf. Vullo*, 144 S. Ct. at 1328 ("The power that a government official wields, while certainly not dispositive, is relevant to the objective inquiry of whether a reasonable person would perceive the official's communication as coercive.").  There are thus no plausible allegations of coercive conduct.

[6] Plaintiff should not be granted leave to further amend its complaint, and the Second Amended Complaint should be dismissed with prejudice as to the Government.  Not only would such amendment be futile because Plaintiff lacks standing for First Amendment claims for equitable

§ 1983. *Iqbal*, 556 U.S. at 675.  In *Bivens*, the Supreme Court for the first time recognized a damages remedy to compensate an individual injured by federal officers who violated his constitutional rights—there, a man who alleged that he was unconstitutionally searched and arrested in his home by the Federal Bureau of Narcotics in violation of the Fourth Amendment's prohibition against unreasonable search and seizure.  *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971); *see also Iqbal*, 556 U.S. at 675.  Since *Bivens*, the Supreme Court has implied a constitutional damages remedy on only two other occasions: to redress an alleged Fifth Amendment equal protection violation by a United States Congressman who admitted to terminating an employee because she was a woman, *see Davis v. Passman*, 442 U.S. 228, 230 (1979); and to redress an alleged Eighth Amendment violation by prison officials whose alleged deliberate indifference to an inmate's asthma led to his death, *see Carlson v. Green*, 446 U.S. 14, 16–18 (1980).  *See also Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017) ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

In the years since these cases were decided, the Supreme Court has "come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power,'" *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quoting

---

relief, *see supra* Argument, Section I.A, and there is no *Bivens* remedy for the First Amendment claim for damages, *see infra* Argument, Section II.B, but the Government also put Plaintiff on notice of the deficiencies in its pleading identified herein at the conference held in this matter on March 8, 2024, and in the pre-motion conference letter the Government submitted prior to that conference, *see* Dkt. No. 22.  Plaintiff subsequently amended its complaint but did not correct these defects.  Accordingly, Plaintiff should not be granted a second opportunity to correct errors known to it at the time it filed its Second Amended Complaint.  *See Payne v. Malemathew*, No. 09 Civ. 1634 (CS), 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend.").

*Hernandez v. Mesa*, 589 U.S. 93, 100 (2020)), recognizing that "creating a cause of action is a legislative endeavor" requiring the weighing of policy considerations—an endeavor "Congress is 'far more competent than the Judiciary'" to undertake, *id.* (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). For this reason, the Supreme Court has reiterated on several recent occasions that "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Id.* (quoting *Abbasi*, 582 U.S. at 135); *see also Iqbal*, 556 U.S. at 675. Thus, when a court is asked to imply a *Bivens* remedy, the "watchword is caution." *Egbert*, 596 U.S. at 491 (quoting *Hernandez*, 589 U.S. at 101).

Before implying a *Bivens* remedy in a given case, a court must apply a rigorous "two-step test, which first asks '[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court,' meaning that it presents a new context, and then asks if there are 'special factors counselling hesitation in the absence of affirmative action by Congress,' in which case a court should decline to extend *Bivens*." *Cohen v. United States*, 640 F. Supp. 3d 324, 336 (S.D.N.Y. 2022) (first alteration in original) (citation omitted).

As the Supreme Court recently observed, in practice, "th[e]se steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. And, as the Supreme Court has cautioned, "*[e]ven a single sound reason* to defer to Congress is enough to require a court to refrain from creating [a *Bivens*] remedy." *Id.* at 491 (emphasis added) (citation and internal quotation marks omitted); *see also id.* at 492 ("If there is *even a single reason* to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." (emphasis added) (citation and internal quotation marks omitted)). Indeed, in every instance, the most important question courts must consider is "who should decide whether to provide for a damages remedy, Congress or the courts," a question

to which there is a clear default answer: "in *most every case*," "the answer is Congress." *Id.* at 492 (emphasis added) (citations and internal quotation marks omitted).

Plaintiff's First Amendment damages claim, even if properly pleaded, would not survive under the Supreme Court's rigorous two-step test for implying a constitutional damages remedy. First, Plaintiff's First Amendment claim indisputably arises in a new context. As discussed above, *Bivens*, *Davis*, and *Carlson* "represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself," *Abbasi*, 582 U.S. at 131, and in none of those cases did the Supreme Court recognize a remedy for a First Amendment *Bivens* claim. Indeed, as the Supreme Court has often reiterated, it has *never* recognized a First Amendment *Bivens* claim in *any* context. *See, e.g.*, *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012); *see also Egbert*, 596 U.S. at 498. Likewise, the Second Circuit has never "recognized a *Bivens* action sounding in the First Amendment." *Zherka v. Ryan*, 52 F. Supp. 3d 571, 579 (S.D.N.Y. 2014). For this reason alone, Plaintiff's First Amendment claim necessarily presents a new context. *See Egbert*, 596 U.S. at 498 ("Because a new context arises when there is a new 'constitutional right at issue,' the Court of Appeals correctly held that Boule's First Amendment claim presents a new *Bivens* context." (citation omitted)).[7]

Second, several special factors counsel against implying a *Bivens* remedy here. The availability of injunctive relief against unconstitutional conduct—which Plaintiff is seeking in this very action—"is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 493 ("If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action."

---

[7] To the extent Plaintiff's First Amendment *Bivens*-type claim can be construed as a First Amendment retaliation claim, it is completely foreclosed by the Supreme Court's decision in *Egbert*. *See* 596 U.S. at 498.

(citation and internal quotation marks omitted)); *accord Correctional Services Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *Abbasi*, 582 U.S. at 144–45, 148; *see also Cohen*, 640 F. Supp. 3d at 340 (concluding that the availability of injunctive relief was an alternative remedial structure that counseled against implying *Bivens* remedy).   Moreover, Plaintiff's *Bivens* claim "calls into question" military policies regarding combatting misinformation, but a "*Bivens* action is not a proper vehicle for altering an entity's policy." *Abbasi*, 582 U.S. at 140 (citation and internal quotation marks omitted).   "Allowing a damages suit in this context . . . would require courts to interfere in an intrusive way with sensitive functions of the Executive Branch," raising separation-of-power concerns. *Id.* at 141.

Finally, because Plaintiff's *Bivens* claim calls into question military policies regarding combatting misinformation, including from foreign sources, it necessarily implicates national security and foreign policy. *See generally* Second Am. Compl.   As courts have long recognized, national security and foreign policy are the prerogatives of Congress and the President. *Abbasi*, 582 U.S. at 142–43; *see also, e.g.*, *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) (matters of foreign affairs "are wholly confided by our Constitution to the political departments of the government, Executive and Legislative").   Accordingly, numerous courts, including the Supreme Court, have consistently concluded that special factors counsel against implying a *Bivens* remedy where doing so would impinge on foreign policy and interfere with national security. *See, e.g.*, *Hernandez*, 589 U.S. at 103–09; *Lebron v. Rumsfeld*, 670 F.3d 540, 551 (4th Cir. 2012); *Arar v. Ashcroft*, 585 F.3d 559, 573–74 (2d Cir. 2009); *Rasul v. Myers*, 563 F.3d 527, 532 n.5 (D.C. Cir. 2009).   This Court should so conclude here.[8]

---

[8] A properly pleaded First Amendment *Bivens* claim would also be subject to dismissal on qualified immunity grounds because Plaintiff has not alleged a violation of a clearly established constitutional right. *See Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020).

## CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion to dismiss Plaintiff's First Amendment claim against it for lack of subject matter jurisdiction and failure to state a claim and dismiss Plaintiff's Second Amended Complaint as to the Government.


Dated:  June 17, 2024
        New York, New York

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for the United States of America*

By:     /s/ *Dana Walsh Kumar*
        DANA WALSH KUMAR
        ALYSSA B. O'GALLAGHER
        Assistant United States Attorneys
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel.: (212) 637-2741/2822
        Email: dana.walsh.kumar@usdoj.gov
               alyssa.o'gallagher@usdoj.gov